UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TED S. STRAUSS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:05-CV-2536-G |
| FORD MOTOR COMPANY, d/b/a JAGUAR CARS, ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are the motions of the defendant Ford Motor Company, d/b/a

Jaguar Cars, and of the defendant Vehicle Leasing II, L.P., d/b/a D&M Leasing

Company, to dismiss the plaintiff's claims against them pursuant to Federal Rule of

Civil Procedure 12(b)(6). Defendant Vehicle Leasing II, L.P., d/b/a/ D&M Leasing's

Motion to Dismiss Plaintiff's Original Class Action Petition; Defendant Ford Motor

Company, d/b/a Jaguar Cars' Motion to Dismiss Plaintiff's Original Class Action

Petition (collectively, "Motions").    For the following reasons, the motions are

granted.

## I. BACKGROUND

The plaintiff, Ted S. Strauss ("Strauss"), seeks to represent himself and others

similarly situated in a class action -- not yet certified -- for monetary damages and

injunctive relief.  The defendants are Ford Motor Company, d/b/a Jaguar Cars, and

Vehicle Leasing II, L.P., d/b/a D&M Leasing Company (collectively, "the

defendants").  The dispute arises out of Strauss's claim that the defendants are

distributing and retailing cars that are "wholly incapable" of compliance with

§ 502.404(a) of the Texas Transportation Code.  Plaintiff's Original Class Action

Petition ("Petition") ¶¶ 2-5.  The Texas Transportation Code requires that a motor

vehicle "display two license plates, at the front and rear of the vehicle." TEX. TRANSP.

CODE ANN. § 502.404(a) (Vernon 1999).  Strauss argues that certain Jaguar models

do not comply with this statute because they are sold and distributed without the

hardware or mechanism necessary to affix the front license plate to the bumper.

Petition ¶¶ 4-5.  Strauss alleges that "consumers continue to receive citations and

. . . to incur fines" as a result of the defendants' omissions. *Id.* ¶ 8.

Based on these facts, Strauss asserts five causes of action against the

defendants for monetary and injunctive relief.  Strauss claims that the defendants

have (1) violated the Texas Transportation Code; (2) breached the implied warranty

of merchantability; (3) breached the implied warranty of fitness for a particular purpose; (4) violated the Texas Deceptive Trade Practices Act; and (5) acted negligently in failing to provide the necessary hardware to attach the front license plate. *Id.* ¶¶ 25, 29, 34, 38, 42, 45. Both defendants have moved, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss all of these claims.

## II.  ANALYSIS

### A.  Rule 12(b)(6) - The Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovant could prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT & MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. See *Capital Parks, Inc. v. Southeastern Advertising*

- 3 -

*and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).  However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  In addition, a court must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 499-500 (5th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).

B. <u>Texas Transportation Code Claim</u>

Strauss maintains that the defendants, by distributing and retailing Jaguar automobiles without the necessary hardware to attach front license plates, are violating section §547.201(a) of the Texas Transportation Code.  Petition ¶ 26. § 547.201(a) provides:  "A person may not offer or distribute for sale or sell an item of vehicle equipment for which a standard is prescribed by this chapter or the department and that does not comply with the standard."  TEX. TRANSP. CODE ANN. §§ 547.201(a) (Vernon 1999).  Strauss's claim fails for two reasons.

First, § 547.201(a) requires retailers and distributors to comply with standards for "an item of vehicle equipment."  This term, "item of vehicle equipment," is not defined in the Transportation Code, but it is doubtful that license plate hardware is

- 4 -

included within its ambit, for such hardware is unlike the other types of equipment specifically referred to therein. *See*, *e.g.*, TEX. TRANSP. CODE ANN. §§ 547.321 (headlamps required), 547.322 (taillamps required), 547.323 (stoplamps required), 547.324 (turn signal lamps required), 547.401 (brakes required), 547.601 (safety belts required), 547.602 (mirrors required), 547.603 (windshield wipers required), 547.605 (emission system required). These items of equipment relate to the safety of the motor vehicle's operator, its passengers, or the public. Compared to items such as these, it is a stretch to classify the hardware to attach a license plate as an item of vehicle equipment. The court is thus unpersuaded by Strauss's contention that § 547.201(a) covers license plate attachment mechanisms.

Second, even if such mechanisms were an "item of vehicle equipment," § 547.201(c) requires retailers and distributors of vehicle equipment to comply with only two types of standards: those prescribed by Texas Transportation Code Chapter 547 and those prescribed by the Texas Department of Transportation. While Strauss urges that the defendants have violated § 547.201(a) by failing to comply with § 502.404 of the Texas Transportation Code (the statute requiring license plates on both the front and rear of a vehicle), Petition ¶ 26, his argument ignores the fact that Chapter 502 of the Transportation Code is not a standard prescribed either by Chapter 547 or by the Texas Department of Transportation. There is no requirement

- 5 -

in § 547.201(a) that the defendants comply with § 502.404 or, indeed, any section of Chapter 502.

The briefs for movants and Strauss discuss whether Strauss could have complied with § 502.404 by placing the front license plate between the windshield and dashboard of the vehicle.  Motions at 5; Plaintiff's Brief in Support of Response to Motion to Dismiss ("Response") at 3.  Defendants cite *State v. Losoya*, 128 S.W.3d 413, 415-416 (Tex. App.--Austin 2004, pet. ref'd) (holding that Mr. Losoya complied with § 502.404 by placing the front license plate on the dashboard of his vehicle), as proof that Strauss could have complied with the statute in this way.  Strauss argues, in response, that *Losoya* is no longer good law.  Plaintiff's Brief in Support of Response to Motion to Dismiss at 4-5.  But whether *Losoya* is good law is ultimately irrelevant to the outcome in this case.  If *Losoya* does correctly state current Texas law, it merely says that Strauss can comply with § 502.404(a) by placing a license plate between his dashboard and windshield rather than affixing it to his front bumper.  It does not change § 547.201(a) to require that *the defendants* comply with, or aid Strauss in complying with, § 502.404(a).

Under Texas law, it was Strauss's responsibility to display license plates at the front and rear of his vehicle.  *See* TEX. TRANSP. CODE ANN. § 502.404(a).  The Texas Legislature did not impose that duty on retailers or distributors.[1]  Strauss has failed to

---

[1]        Strauss alleges that he and members of the putative class, "[a]s persons (continued...)

state a claim for violation of the Texas Transportation Code.  That claim is therefore

dismissed.

## C.  Breach of Implied Warranty of Merchantability

In his next claim, Strauss alleges that the defendants have breached the implied

warranty of merchantability.  Petition ¶ 29.  To prove a breach of this warranty under

Texas law, Strauss must demonstrate a defect in the "condition of the goods that

renders them unfit for the ordinary purposes for which they are used."  *Plas-Tex, Inc.*

*v. U.S. Steel Corporation*, 772 S.W.2d 442, 443-44 (Tex. 1989); *see also* TEX. BUS. &

COM. CODE ANN. § 2.314(b)(3) (Vernon 1994).  Strauss argues that because his

Jaguar was sold without hardware to attach the front license plate, it is illegal for use

on Texas roadways and thus unfit for the car's ordinary purpose.  Petition ¶¶ 30, 31;

Response at 6.  The defendants correctly assert, however, that the display of a front

license plate is irrelevant to the ordinary purpose of an automobile.  Motion at 6-10.

---

[1](...continued)
whom § 547.201(a) is intended to benefit, . . . have a private right of action under
Texas law for violations of that statute."  Petition ¶ 26.  Implicit in this allegation is
the premise that § 547.201(a) imposes a duty on *the defendants* which, when breached,
gives rise to a claim in favor of Strauss and the class he seeks to represent.  The court
concludes that the defendants have no duty to Strauss under § 547.201(a) which has
been breached here.  See *Greater Houston Transportation Co. V. Phillips*, 801 S.W.2d
523, 525 (Tex. 1990) ("The plaintiff must establish both the existence and the
violation of a duty owed to the plaintiff by the defendant to establish liability in tort.
Moreover, the existence of duty is a question of law for the court to decide from the
facts surrounding the occurrence in question.") (citations omitted).

"The ordinary purpose of an automobile is to provide transportation."

*Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 503 (Tex. App.--Eastland 2002,

pet. denied), citing *General Motors Corporation v. Brewer*, 966 S.W.2d 56, 57 (Tex.

1998). Strauss argues that a car's ordinary purpose is to provide legal transportation

in Texas. If this were a car's ordinary purpose, car dealers and distributors would be

required to warrant that vehicles, as sold, are legal for use in Texas. As Strauss

indirectly points out, however, such a warranty would be impossible to make.

Strauss states that after purchasing a car, the owner must wait several weeks

before receiving the license plates in the mail. Response at 6. In addition, vehicle

owners must also obtain the proper insurance, registration and inspection stickers.

Tex. Transp. Code Ann. §§ 601.053, 502.002, 548.051 (Vernon 1999). All of these

requirements must be met before a car can legally be driven on Texas roads, yet they

cannot be met by retailers and distributors. Thus, retailers and distributors cannot

warrant that a car, as sold, is legal to be driven in Texas. Vehicle owners have duties

to fulfill before a car becomes legal for use in Texas; obtaining and attaching the

license plate is one of them.

The sole ordinary purpose of a vehicle is to provide transportation. *Chandler*,

81 S.W.3d at 503. For the reasons stated above, this rule cannot be stretched to

require retailers and distributors to warrant that the car, as sold, is legal to be driven

in Texas.  Since Strauss does not contend that the Jaguar was unfit for transportation,

he has not stated a breach of the implied warranty of merchantability in this case.

Moreover, even if -- as averred by Strauss -- the ordinary purpose of a car is to

provide *legal* transportation in Texas, Strauss's claim still fails as a matter of law.  A

product must be *unfit* for its ordinary purpose in order to breach the implied warranty

of merchantability.  *Plas-Tex*, 772 S.W.2d at 443-44.  Here, Strauss alleges no facts in

support of his claim that the bumper was "wholly incapable" of accommodating a

front license plate.  Instead, Strauss equates inconvenience with impossibility.

Strauss's sole complaint is that the car did not come with a pre-attached mechanism

for holding the plate.  Petition ¶ 23.  Admittedly, affixing the front plate without a

pre-attached mechanism is probably less convenient than most consumers would

prefer, but it does not constitute a breach of the implied warranty of merchantability.

See *General Motors Corporation v. Brewer*, 966 S.W.2d at 57 (a buyer cannot maintain

a claim for breach of the implied warranty of merchantability simply because the

product "does not function as well as the buyer would like, or even as well as it

could.").  Thus, even if the ordinary purpose of Strauss's Jaguar is to be driven legally

in Texas, it was never unfit for this purpose.  The word unfit connotes incapability,

not mere inconvenience.  See *id.*  Here, Strauss simply had to take the additional step

of obtaining a device to affix the license plate to his front bumper.  This

inconvenience does not render the car unfit to hold a front license plate.  *Id.*  Strauss

has not stated a claim for breach of the implied warranty of merchantability in this case, and that claim is therefore dismissed.

> D.   <u>Breach of Implied Warranty of Fitness for a Particular Purpose</u>

Strauss's next claim for relief is that the defendants breached the implied warranty of fitness for a particular purpose.  Petition ¶ 34.  The Texas Business and Commerce Code provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish the suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."  TEX. BUS. & COM. CODE § 2.315 (Vernon 1994).  Strauss argues that the defendants breached this warranty because they knew that Jaguar automobiles, without modification, were incapable of driving on Texas roadways in compliance with Texas law.  Petition ¶ 35.  This claim fails for two reasons.

First, the implied warranty of fitness for a particular purpose does not apply here.  Texas courts hold that to maintain an action for breach of the implied warranty of fitness for a particular purpose, the plaintiff must allege that the product was to be used for some purpose different than the product's ordinary purpose.  See *Chandler*, 81 S.W.3d at 503 (ordinary purpose of an automobile is to provide transportation); *JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618, 630 (Tex. App.--Corpus Christi 2005, no pet.) ("The particular purpose must differ from the ordinary use."); *ASAI v. Vanco*

*Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.--El Paso 1996, no writ) (same); *Croshyton Seed Company v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex. App.--Corpus Christi 1994, no writ) (same).  In addition, the comment to § 2.315 provides that a particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability."  TEX. BUS. & COM. CODE ANN. § 2.315 Comment 2.

Here, however, Strauss does not allege that he used his car in a way that was peculiar to his nature of business or for some purpose different than the car's ordinary purpose.  He alleges only that he used the car for transportation, which is the ordinary purpose of an automobile.  *Chandler*, 81 S.W.3d at 503.  This ordinary purpose does not become a particular purpose simply because Strauss used the car in Texas.  If the implied warranty of fitness for a particular purpose were applied in this situation, the same logic would require it to apply to every car in the country used primarily in one state.  All retailers and distributors who had reason to know where their customers lived would impliedly warrant that their cars, as sold, are fit for the purpose of legal use in that state.  As stated above, this is an impossible warranty for retailers and distributors to make because of the many obligations that vehicle owners must fulfill before the car becomes legal for use.  Moreover, the comment to § 2.315 of the Texas Business and Commerce Code indicates that such interpretation of the

implied warranty of fitness for a particular purpose was not intended.  TEX. BUS. &
COM. CODE ANN. § 2.315 Comment 2. Thus, the warranty does not apply in this
case.

Second, even if it were assumed that the warranty does apply here, Strauss's
claim still fails.  Strauss alleges only that the defendants failed to provide him with
the proper equipment.  Petition ¶ 4.  As stated above, this amounts only to
inconvenience.  It does not mean that the car was unfit to hold a license plate.
Strauss alleges no facts in support of his broad statement that the car was "wholly
incapable" (Petition ¶ 5) of accommodating a front license plate.  He complains only
that he was not given all the necessary hardware.  *Id.* ¶ 4.  Thus, even if the implied
warranty of fitness for a particular purpose applied here, Strauss has alleged no facts
to show that his Jaguar automobile is unfit for the particular purpose of driving legally
on Texas roads.  For these reasons, Strauss's claim for  breach of the implied warranty
of fitness for a particular purpose is dismissed for failure to state a claim on which
relief can be granted.

E.  Violation of Texas Deceptive Trade Practices Act

Strauss argues that the defendants are liable under the Texas Deceptive Trade
Practices Act (TDTPA).  Petition ¶ 38.  This Act provides that a consumer may file
suit where an "unconscionable action or course of action" constitutes a "producing
cause" of economic damages.  TEX. BUS. & COM. CODE § 17.50(a)(3).  An

"[u]nconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). Strauss alleges that the defendants have engaged in an unconscionable course of action by selling automobiles in Texas that are inadequately equipped to operate in compliance with state law.  Petition ¶¶ 39-40.

The defendants' conduct was not unconscionable as the term is defined by the TDTPA.  The Texas Supreme Court has interpreted the term "grossly unfair" in § 17.45(5) of the TDTPA to mean "glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985).  It is not enough to allege that a defendant "simply . . . took unfair advantage" of the consumer. *Id.* at 582.  Even if this were the standard, Strauss could not meet it.  But he certainly has not alleged that the defendants took unfair advantage of him in a way that was flagrant or glaringly noticeable.

In *Chastain*, the defendants were vendors of land who represented to their purchasers that only one lot nearby would be used for commercial purposes. *Id.* at 580.  The defendants failed, however, to file a subdivision map or plat that would make this representation legally binding. *Id.*  Later, the vendors allowed another lot to be used as an oilfield pipe storage yard. *Id.*  When purchasers complained, one of the vendors threatened to construct a rubber plant nearby and "burn rubber all day."

- 13 -

*Id.* Despite this, the court held that the defendants' conduct was not grossly unfair, as that term is defined in the opinion. *Id.* at 584. Although the jury found the defendant's conduct unconscionable, the court reversed, finding "no evidence of unconscionability." *Id.*

As *Chastain* demonstrates, proving unconscionability in a TDTPA case is difficult. Here, Strauss alleges only that the defendants failed to provide him with necessary hardware to attach his front license plate. Essentially, Strauss alleges that the defendants sold him a car that made it somewhat inconvenient to comply with Texas law. These allegations pale in comparison to the facts in *Chastain*. But even there the court did not find the defendants' conduct unconscionable. *Id.* Thus, the court may assume that all of the facts alleged by Strauss are true, but the defendants' conduct is still not unconscionable under the TDTPA. For these reasons, Strauss's TDTPA claim is dismissed.[2]

### F.  Negligence and Negligence Per Se

Strauss asserts claims for common law negligence and negligence per se. Both these claims must fail as a result of the Texas economic loss rule. See *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). This rule provides that "to be

---

[2]       Strauss also claims that the defendants violated the TDTPA by breaching the implied warranties of merchantability and fitness for a particular purpose discussed above. Because the court has concluded that those breach of warranty claims must be dismissed, it necessarily follows that Strauss's TDTPA claim founded on them must be dismissed as well.

entitled to damages for negligence, a party must plead and prove something more than mere economic harm." *Blanche v. First Nationwide Mortgage Corporation*, 74 S.W.3d 444, 453 (Tex. App.--Dallas 2002, no pet.). More specifically, "a party must plead and prove either a personal injury or property damage as contrasted to mere economic harm." *Express One International, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.--Dallas 2001, no pet.). Strauss has not alleged any personal injury or property damages. Strauss alleges only economic damages in the form of the $155 fines for failing to display a front license plate. Petition ¶ 8. Therefore, Strauss's negligence claims are dismissed pursuant to the Texas economic loss rule.

## III.  CONCLUSION

For the reasons discussed above, the defendants' motions to dismiss the plaintiff's original complaint are **GRANTED**. Judgment will be entered dismissing all claims against all defendants, pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim.

It is therefore **ORDERED** that all claims asserted by Ted. S. Strauss, individually and on behalf of all others similarly situated, against Ford Motor Company, d/b/a Jaguar Cars are **DISMISSED**.

It is further **ORDERED** that all claims asserted  by Ted. S. Strauss, individually and on behalf of all others similarly situated, against Vehicle Leasing, II, L.P., d/b/a D&M Leasing Company are **DISMISSED**.

- 15 -

It is further **ORDERED** that defendants' pending motions to stay discovery are **DENIED** as moot.

July 12, 2006.

_____
A. JOE FISH
CHIEF JUDGE